# 21-2095

## United States Court of Appeals
## for the Second Circuit

CHAZ PERRY, WAYNE ASKEW, BRANDAN BASS, JAMES
BEDDIA, and FRANTZ BONNEAU, *et al.*,

*Plaintiffs-Appellees,*

*against*

CITY OF NEW YORK and
NEW YORK CITY FIRE DEPARTMENT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York

### REPLY BRIEF

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel
of the City of New York*
Attorney for Appellants
100 Church Street
New York, New York 10007
212-356-2490 or -0819
jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
DANIEL MATZA-BROWN
JAMISON DAVIES
   *of Counsel*

March 31, 2022

Reproduced on Recycled Paper

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................iii

PRELIMINARY STATEMENT ................................................... 1

ARGUMENT ................................................................................. 3

POINT I............................................................................................ 3

    PLAINTIFFS FAILED TO PROVE LIABILITY FOR THEIR
    ALLEGED PRE-SHIFT WORK......................................................... 3

    A.   The City is not liable for work that plaintiffs failed to
        report. ................................................................................... 3

    B.   The City did not have actual knowledge of pre-shift work........ 9

    C.   Plaintiffs' proof of constructive knowledge was
        insufficient as a matter of law in any event. ........................... 15

    D.   At a minimum, any underpayment was not willful. ................. 20

POINT II ......................................................................................... 23

    A NEW DAMAGES TRIAL IS NECESSARY BECAUSE
    THE JURY ANSWERED THE WRONG QUESTION .................. 23

POINT III........................................................................................ 26

    A NEW TRIAL ON EMTS' POST-SHIFT CLAIMS IS
    NECESSARY BECAUSE THE COURT ERRONEOUSLY
    REJECTED THE CITY'S DEFENSE AS A MATTER OF
    LAW ............................................................................................ 26

CONCLUSION ............................................................................... 35

CERTIFICATE OF COMPLIANCE ............................................. 36

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrams v. Dep't of Pub. Safety*,
  764 F.3d 244 (2d Cir. 2014) ......................................................... 27, 28

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ........................................................................... 17

*Campbell v. City of New York*,
  2021 U.S. Dist. LEXIS 40933 (S.D.N.Y. Mar. 4, 2021) ................... 5, 8

*Doe v. E. Lyme Bd. of Educ.*,
  962 F.3d 649 (2d Cir. 2020) ............................................................... 29

*Edwards v. City of New York*,
  2012 U.S. Dist. LEXIS 68055 (S.D.N.Y. May 15, 2012) ....................... 5

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
  646 F.2d 413 (9th Cir. 1981) ................................................ 5, 9, 15, 22

*Gordon v. Kaleida Health*,
  299 F.R.D. 380 (W.D.N.Y. 2014) ......................................................... 5

*Hertz v. Woodbury County*,
  566 F.3d 775 (8th Cir. 2009) ................................................... 5, 8, 9, 11

*Hinterberger v. Catholic Health Sys.*,
  299 F.R.D. 22 (W.D.N.Y. 2014) ........................................................... 5

*Holzapfel v. Town of Newburgh*,
  145 F.3d 516 (2d Cir. 1998) .................................................................. 6

*Jarvis v. Ford Motor Co.*,
  283 F.3d 33 (2d Cir. 2002) .................................................................. 31

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) ................................................. 6, 7, 14, 20

ii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Lindow v. United States,*
738 F.2d 1057 (9th Cir. 1984) ........................................................ 32, 33

*Musacchio v. United States,*
577 U.S. 237 (2016) ................................................................ 29

*Newton v. City of Henderson,*
47 F.3d 746 (5th Cir. 1995) ........................................................ 8, 9, 15

*Novick v. AXA Network, LLC,*
642 F.3d 304 (2d Cir. 2011) ................................................................ 30

*Omega SA v. 375 Canal, LLC,*
984 F.3d 244 (2d Cir. 2021) ................................................................ 28

*Scott v. Chipotle Mexican Grill, Inc.,*
954 F.3d 502 (2d Cir. 2020) ................................................................ 16

*Singh v. City of New York,*
524 F.3d 361 (2d Cir. 2008) ................................................................ 34

*West v. Goodyear Tire & Rubber Co.,*
167 F.3d 776 (2d Cir. 1999) ................................................................ 27

*White v. Baptist Mem'l Health Care Corp.,*
699 F.3d 869 (6th Cir. 2012) ........................................................ *passim*

## Other Authorities

29 C.F.R. § 785.48(a) ........................................................ 11, 21

iii

## PRELIMINARY STATEMENT

Plaintiffs used the City's timekeeping system to make hundreds of thousands of overtime requests during the timeframe at issue, and their requests were nearly always granted. There is no merit to their contention that, at the same time that the City was approving tens of millions of dollars' worth of overtime, it also willfully ignored that plaintiffs were sporadically working additional, unpaid overtime that they never reported through the same system.

Contrary to plaintiffs' arguments, this Court has never squarely addressed when an employer can be held liable under FLSA where an employee has failed to use an available system for reporting overtime. And they fail to provide any compelling reason why this Court should not adopt the standard applied by four other circuits: an employer cannot be held liable where an employee fails to make use of an available system for reporting overtime, unless the employer actually knew that the employee was working overtime without compensation.

Applying that standard here requires reversal of the judgment for pre-shift work, as plaintiffs failed to use the City's system and failed to establish actual knowledge on a collective basis as a matter of law.

Indeed, even on an individual basis, many plaintiffs conceded that they did no work in the presence of any supervisor before their shifts started.

A new trial on damages is also required. The jury never tested plaintiffs' key damages assumption that all time recorded from when they scanned in until they scanned out was working time. The jurors registered understandable confusion about what, precisely, they were asked to consider and the district court did not guide them to the correct question. The City's timekeeping system requires employees to scan in when they arrive and out when they leave and, therefore, could only track arrival and departure times, not time worked. But the district court erroneously failed to ask the jury to decide whether that time was *all* time "worked" under FLSA. The City is entitled to a trial by jury on the factual premise underlying plaintiffs' damages theory.

The liability finding for post-shift work by EMTs must also be vacated because the district court erroneously rejected the City's de minimis defense as a matter of law. With little analysis, the court took the question away from the jury by granting summary judgment to plaintiffs, and at trial again deprived the City of its opportunity to have its defenses tested by a finder of fact.

2

## ARGUMENT

## POINT I

## PLAINTIFFS FAILED TO PROVE LIABILITY FOR THEIR ALLEGED PRE-SHIFT WORK

Plaintiffs do not dispute (1) that they did not request overtime for any of the alleged work underlying their pre-shift claims, (2) they could have requested overtime, or (3) that more than 98% of overtime requests were granted, yielding $150 million in payments during the relevant period. The ready availability of that timekeeping system, and the fact that nearly all overtime requests were granted, shows that plaintiffs could not establish either that the City required their work to be performed outside regular hours or had actual knowledge that unpaid work was being performed outside regular hours. This Court should adopt the standard that, absent either of those showings, the employer should be found to lack knowledge of the unreported work as a matter of law and reverse on liability for pre-shift work.

### A. The City is not liable for work that plaintiffs failed to report.

Plaintiffs provide no good reason for this Court break from the several other circuits, and district courts in this Circuit, that have held

3

that FLSA does not compel compensation for work that employees have failed to report to the employer, even though a reasonable process for doing so is in place.[1] As numerous courts have held, "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for nonpayment if the employee fails to follow the established process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).

That standard is eminently reasonable. If employees fail to "follow reasonable time reporting procedures," they prevent the employer from "knowing its obligation to compensate the employee" and thwart "the employer's ability to comply with the FLSA." *Id.* It would "not be reasonable" to require the employer to "weed through" records to discover if employees were working beyond scheduled hours, particularly where there is an "established procedure for overtime

---

[1] Plaintiffs misleadingly characterize the City's argument as contending that "constructive knowledge is an insufficient basis to impose liability" (Brief for Appellees 28), ending the quote before the remainder of the sentence describing the circumstances where constructive knowledge cannot be shown as a matter of law (Brief for Appellants 49). The City acknowledges that, in general, constructive knowledge can be a basis for FLSA liability. But not where the employer has established a reasonable process for reporting uncompensated time that employees failed to use.

4

claims that Plaintiffs regularly used." *Hertz v. Woodbury County*, 566 F.3d 775, 782 (8th Cir. 2009). The rule gives the employer the "opportunity to comply with the provisions of the FLSA." *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). And, to hold otherwise would "perversely incentivize employers to keep closer tabs on employees." *White*, 699 F.3d at 874 (quotation marks omitted).

Plaintiffs argue that the City's proposed rule would violate this Court's clearly established precedent (Brief for Appellees ("Perry Br.") 28–31). Not so. As one district court recently explained, this Court has "never squarely addressed the question." *Campbell v. City of New York*, 2021 U.S. Dist. LEXIS 40933, at *22 (S.D.N.Y. Mar. 4, 2021). And the district court there went on to conclude that it is "incontrovertible that if an employer sets up a sufficient, working system for employees to receive overtime pay" and employees fail to use that system, "the employer should not be expected to have knowledge that the employee is not being paid." *Id.*; *see also Gordon v. Kaleida Health*, 299 F.R.D. 380, 396 (W.D.N.Y. 2014); *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 45 (W.D.N.Y. 2014); *Edwards v. City of New York*, 2012 U.S. Dist. LEXIS 68055, at *10–11 (S.D.N.Y. May 15, 2012). Plaintiffs'

citation of contrary district court authority—without disclosing cases that did not reach their preferred result—only proves that this is a live issue that this Court has not resolved (Perry Br. 30 (citing *Perez v. City of New York*, 2017 U.S. Dist. LEXIS 159473 (S.D.N.Y. Sept. 27, 2017)). Not only has this Court never adopted plaintiffs' suggestion that an employee's failure to use an adequate means to claim overtime is irrelevant to liability, but several district court decisions have held that to be a critical part of the inquiry.

And, as those courts correctly recognized, the pragmatic approach of numerous other circuits is consonant with this Court's decisions in *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) and *Holzapfel v. Town of Newburgh*, 145 F.3d 516 (2d Cir. 1998). *Holzapfel* did not involve an employer with an established, accessible system for reporting overtime. Instead, the defendant there had a policy of paying two hours of overtime per week regardless of the time worked. 145 F.3d at 519. And, in *Kuebel*, the employer "instruct[ed]" or "direct[ed]" the plaintiff to falsely underreport his time worked, thereby defeating any contention that the process for reporting time was reasonable. 643 F.3d at 363. Indeed, the post-*Kuebel* case applying the standard the City

proposes distinguishes *Kuebel* on precisely that basis. *See White*, 699 F.3d at 876 (explaining that *Kuebel* involved a situation where "the employer prevented the employees from reporting overtime"). Plaintiffs also overstate *Kuebel*'s holding. This Court only went as far as to say that an employee who is required to submit timesheets and omits overtime from them is not "*necessarily*" precluded from making a claim where, unlike here, "the employee's falsifications were carried out at the instruction of the employer." *Kuebel*, 643 F.3d at 363 (emphasis added).

To be sure, *Kuebel* explains generally that "once an employer knows or has reason to know that an employee is working overtime," it cannot deny compensation. *Kuebel*, 643 F.3d at 363. But only actual knowledge should suffice where a reasonable process for reporting time is in place, yet goes unused by the employee. That is because, in that circumstance, the employer does not have "reason to know" of any uncompensated work time as a matter of law. An employer is entitled to channel time reporting into an established system without having to fend off *ex post* claims that it should have gleaned through other means that some amount of unreported time was compensable. That is especially so where, as here, employees used the system to claim tens of

7

millions of dollars in overtime, and they allege only that some of those employees were sporadically working uncompensated overtime and failed to report it through the same procedure. *See Campbell*, 2021 U.S. Dist. LEXIS 40933, at *24 (where overtime requests are regularly approved, the defendant "should not be expected to know" plaintiffs "were working unpaid overtime").

Plaintiffs argue that the cases setting out the standard for overtime claims where an established reporting method exists hold that constructive knowledge may be a basis for FLSA liability (Perry Br. 31–32). But the import of those cases is that, where an established system for requesting overtime exists and is widely used, the employer does not have constructive knowledge of unpaid overtime as a matter of law because the failure to use that system "prevents the employer from knowing" about unpaid overtime. *White*, 699 F.3d at 876. This is true even if the employer has some "[a]ccess to records indicating that employees were working overtime." *Hertz*, 566 F.3d at 781; *accord Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995). This Court should adopt that rule, following the Fifth, Sixth, Eighth, and

Ninth Circuits. *White*, 699 F.3d at 876; *Hertz*, 566 F.3d at 782; *Newton*, 47 F.3d at 749; *Forrester*, 64 F.3d at 414–15.

### B. The City did not have actual knowledge of preshift work.

Applying the standard taken from those cases, where an established, accessible overtime reporting system exists, an FLSA plaintiff must prove actual knowledge. Plaintiffs distinguish the wealth of cases regarding established overtime reporting systems by arguing that, unlike in those cases, the City had actual knowledge that plaintiffs were performing uncompensated work. The record does not support their argument, even affording them all reasonable inferences.

At trial, plaintiffs explained their theory that, upon arriving to the station each day, they clocked in and immediately "check[ed] in with the lieutenant" about their work assignments, triggering the continuous workday (A1190–91). But only thirteen out of the 2,519 plaintiffs testified, and several of those testifying plaintiffs made clear that they did *not* immediately discuss work after scanning in (A2501, 2783, 2806, 2885), or only checked in to satisfy personal curiosity about their partner for the day (A2806). Plaintiffs were not permitted to prove

9

actual knowledge using representative evidence (*see* SPA43, 46), and, even if they were, the evidence did not show that the representative plaintiffs uniformly scanned in and immediately began work.

Plaintiffs first argue in response that supervisors had actual knowledge through their access to timesheets indicating daily arrival and departure times (Perry Br. 33). But CityTime's timeclock data reflect when employees arrive and leave, not when they are working (*see* Brief for Appellants ("App. Br.") 11–14, 61–62). The system incorporates hand scanners to track whether employees are present on site for their entire scheduled shifts or whether they arrive late or leave early. Then, when submitting their timesheets for the week, employees may request overtime beyond the compensation for their scheduled shifts. Thus, there was no reason for the City to presume that every minute an employee was clocked in reflected time worked, as opposed to time present, especially given the volume of overtime requests it approved. Indeed, plaintiffs tacitly concede the point: they undisputedly were not working all the time after clocking in or before clocking out, even by their own damages calculation, as shown by the fact that they

sought damages for only up to 15 minutes before or after their shifts, even though they often arrived earlier due to unpredictable commutes.

The City was not obliged to "weed through" the timekeeping data to "determine whether or not its employees were working beyond their scheduled hours," where it had "an established procedure for overtime claims." *Hertz*, 566 F.3d at 782; *see also* 29 C.F.R. § 785.48(a) (explaining that payment is not required where employees "voluntarily come in before their regular starting time or remain after their closing time"). In fact, it would not even have been possible to distill from the CityTime data whether plaintiffs worked uncompensated overtime, because, again, timeclock data reflects arrival and departure times, not necessarily compensable work time. Someone going through that data with a fine-toothed comb still would have no way of separating working from nonworking time.

Likewise, plaintiffs' argument that some supervisors observed some pre- and post-shift work is insufficient to establish actual knowledge of compensable, but unpaid, overtime—let alone to establish it on a collective-wide basis. The "relevant knowledge is not 'I know that the employee was working,' but 'I know the employee was working and

11

not reporting his time.'" *White*, 699 F.3d at 875. Here, assuming that plaintiffs' supervisors sometimes witnessed pre- or post-shift work, plaintiffs did not prove that the supervisors knew it was uncompensated for two reasons. First, as plaintiffs do not dispute, they submitted hundreds of thousands of overtime requests during the relevant period. At any given time, no supervisor could have known that any particular plaintiff was not going to request overtime to which she was entitled. Second, as plaintiffs conspicuously fail to address, the agreed-upon rounding rules in their collective bargaining agreement (CBA) provided that up to seven minutes of work is not compensable as overtime (*see* Joint Appendix ("A") 2089).

To have knowledge of *compensable* overtime under the CBA, a supervisor would have to know *both* that an employee was working longer than eight minutes *and* that she was not going to claim overtime for the work, despite the required certification that she "requested compensation for any time that [she] worked in excess of [her] scheduled hours" (A3904). The record at trial was insufficient to permit the jury to draw that conclusion (*see* App. Br. 41–44). Even the most diligent supervisor could not undertake the unreasonable task of

12

constantly surveilling each employee in real time, recording all of those observations, and then comparing the results to overtime requests.

Indeed, as the lead plaintiff himself testified, he told his co-workers they "absolutely should be submitting" overtime requests for work outside their shifts (A2055–56). He believed they followed his advice (A2056). And he himself requested and was granted overtime for the type of tasks at issue here dating back to 2012 (A2042–45). Another plaintiff made such requests dating back to 2011 and was never told not to submit them (A2498, 2557). Yet another never had an overtime request rejected during her 27-year career (A1646).

Plaintiffs point to what is at best ambiguous testimony from a single witness to support their argument that they were not permitted to request overtime as a policy (Perry Br. 33–34). The witness testified that overtime for tasks "like checking equipment" was "not requestable" (A1844). At the outset, that does not cover all the tasks for which plaintiffs sought—and received—overtime payment. The testimony also does not account for the rounding down in the CBA. If those tasks took less than eight minutes then, as plaintiffs agreed, overtime was in fact not requestable. The witness also did not testify that he "instruct[ed]" or

13

"direct[ed]" anyone not to request overtime on that basis. *See Kuebel*, 643 F.3d at 363. And, despite that testimony, a plethora of evidence shows that plaintiffs routinely requested and received overtime (*see*, *e.g.*, A1388–96, 1429, 1995).

Likewise, plaintiffs' string cite of testimony to support their argument that they knew that "requests for pre-shift overtime would be denied, or actually had overtime requests denied" in fact illustrates the paucity of evidence for that claim (Perry Br. 40). Nearly every piece of testimony to which plaintiffs cite concerns post-shift narcotics transfers, which are not at issue in this appeal (*see* A1323, 1545, 1688, 1987–88, 2021–22; App. Br. 22 (explaining that the City is not contesting liability for paramedics' post-shift work because it largely involved narcotics transfers)). In the one instance not describing post-shift narcotics transfers, a witness described an "understanding amongst all [his] coworkers" that he could not request overtime for pre-shift work, without identifying the source of that "understanding" (A1557). And he conceded in his deposition that no one ever told him that he would not be paid for pre-shift work (*id.*). That is far from legally sufficient

evidence to show that 2,519 plaintiffs were systematically prevented from requesting payment for pre-shift work.

In sum, plaintiffs requested overtime on hundreds of thousands of occasions, with a denial rate of under 2% and more than $150 million in paid overtime during the period at issue (A2973). Plaintiffs' failure to use this system on some occasions raises the situation where "the acts of an employee prevent an employer from acquiring knowledge" of uncompensated work and, in that circumstance, "the employer cannot be said to have suffered or permitted the employee to work." *Forrester*, 646 F.2d at 414–15; *see also Newton*, 47 F.3d at 749 (holding that FLSA does not deprive a municipal employer of "the right to require an employee to adhere to its procedures for claiming overtime").

## C. Plaintiffs' proof of constructive knowledge was insufficient as a matter of law in any event.

Even assuming plaintiffs' failure to report their unpaid time using CityTime does not, by itself, foreclose them from proving constructive knowledge as a matter of law, plaintiffs' proof of constructive knowledge was insufficient. The district court's similarly situated finding did not authorize plaintiffs to use representative evidence to establish

15

constructive knowledge on a collective-wide basis (SPA43, 46). *See Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 522 (2d Cir. 2020) (collective treatment is appropriate only "to [the] extent" plaintiffs are similarly situated).

Plaintiffs argue that their cherry-picked testimony was sufficient to prove a City-wide policy or practice of permitting uncompensated overtime work, absolving them of the need to establish knowledge by individual supervisors (Perry Br. 35–38). The evidence showed that, on average, there were two unpaid 15-minute periods per month (rounded up), sprinkled amongst the considerable overtime plaintiffs did request (App. Br. 50). That minimal amount of overtime is not nearly enough, on its own, to prove that the City had constructive knowledge that they were denied compensable overtime on a collective basis.

Plaintiffs very often arrived at the station less than eight minutes before their shifts started (*see* A2969–70). On those days, it was reasonable to believe that plaintiffs were not performing any compensable work before the start of their paid time; again, the CBA's rounding rules rendered such work non-compensable. Nor was it evident that plaintiffs were doing compensable pre-shift work—

16

meaning, more than seven minutes of such work—on the days they happened to arrive more than seven minutes before the start of their shifts. A key reason employees arrived early, which plaintiffs do not address, was because they had to structure their commutes to avoid being late (*e.g.*, A1234–35, 1972). Many EMTs regularly got to work 20 or 30 minutes before the start of their shifts, particularly those who had long commutes (*id.*). And plaintiffs' decision to cap their pre-shift damages at only 15 minutes, even though many arrived more than 15 minutes pre-shift, is tantamount to a concession that not every moment of time after arrival at the station was compensable. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 689 (1946) (explaining the distinction between arrival at the workplace and the beginning of compensable work).

The City also knew that that no pre-shift work was necessary, as plaintiffs routinely arrived right at the start of their shifts (*see, e.g.*, A1344, 1362, 2503, 2796, 2799, 2882). Plaintiffs' argument to the contrary relies on their mischaracterization of how CityTime works. They argue that CityTime captures employees' work time (Perry Br.

36).[2] In fact, CityTime hand scans capture when employees arrive at the station and when they depart, not necessarily whether they are working the entire time (A1888, 2098). The City uses timeclock data to record whether an employee arrived on time and stayed for their whole shift (*see* A1888, 2921, 2923). But employees arriving earlier could do any number of nonwork activities between scanning in and the beginning of their shift (*see* A1865, 2609–11, 2641). The procedure for requesting overtime if the employee was working during that period is separate from scanning in and out. Thus, plaintiffs' characterization throughout their brief that CityTime scans capture time worked, not merely time present, flies in the face of the record and, quite simply, reality (Perry Br. 36, 39–41).

The evidence also does not support plaintiffs' argument that CityTime was designed to be confusing or to prevent employees from being paid for overtime. Instead, it is undisputed that hundreds of

---

[2] The two pages of the record plaintiffs cite for the proposition that CityTime records time worked, not time present, do not support their argument. In one, the witness says explicitly that it "tracks time at the work site" (A2124), not time worked. In the other, the witness explains that the CityTime system as a whole, including submission of final time sheets with overtime requests, records time worked, but that the purpose of the hand scanners at stations is only to record the time that employees arrive and depart (A1888, 1894).

thousands of overtime requests for millions of dollars were approved—including requests from the plaintiffs who testified at trial, and often for the same kinds of tasks at issue in this litigation. For their part, supervisors testified that they rarely or never denied overtime requests (A1509, 1853).

Likewise, the command order issued in 2014 as a reminder to avoid unpaid work, and to report compensable work, is insufficient to show constructive knowledge that employees were working unpaid overtime. The order highlights various small tasks that could and should be done during an employee's shift. Performance of those tasks would not likely meet the eight-minute threshold for claiming overtime (A4914–15). And the order's key directive was that, when employees had to perform compensable work before or after their shifts, they needed to alert their supervisors so that they would be compensated (*id.*). Nothing in the command order indicates any awareness that the time that might have been worked pre- or post-shift was not being reported or paid.

The order reflects nothing more than the pragmatic balance underlying the CityTime reporting system: although workers are

19

automatically paid for time clocked in during their shifts, they must report their overtime minutes to be paid for them. This approach avoids unnecessarily overpaying workers, at taxpayer expense, for time not compensable under FLSA. The 2014 order, by reiterating that framework and the obligation to compensate employees in the event they take on certain brief pre- and post-shift tasks, does not evince constructive knowledge of any meaningful amount of unpaid but compensable work, particularly given the volume of compensated overtime requests.

### D.  At a minimum, any underpayment was not willful.

Plaintiffs' arguments also fail to salvage the finding that the City "knew or showed reckless disregard for" whether it was appropriately compensating plaintiffs for pre-shift work. *Kuebel*, 643 F.3d at 366 (quotation marks omitted). The City processed thousands of weekly overtime requests during the relevant timeframe, resulting in millions of dollars of approved overtime. It implemented a system that permitted employees to request overtime for hours that they worked outside of the contractually negotiated minimum overtime periods. And it reasonably believed that system was sufficient to comply with FLSA and comported

with federal regulations (A2925). *See* 29 C.F.R. § 785.48(a) (where time clocks are used, "employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods" and their "early or late clock punching may be disregarded").

Plaintiffs rely on the fact that EMTs put the City on notice in 2005 that they wanted payment for the pre- and post-shift work at issue here. But the resolution of that complaint wasn't for them to be paid for all their time at the station—after all, such an approach that would incentivize workers to arrive early to paid for time not worked, and waste public funds. Instead, plaintiffs should be paid for time at the station if that time is compensable work time under the CBA, which can only be known with precision if the employees themselves reported that work time via overtime requests. And the system the City implemented after 2005 was meant to fulfill exactly those requirements. The CityTime system required a certification that compensation was requested for all time worked and included the ability to request overtime within that system for work done outside of an employee's

21

standard shift.[3] Given how extensively that system was used, the City reasonably believed it was paying paramedics and EMTs for any compensable overtime. *See White*, 699 F.3d at 876 (employees' failure to follow established procedures "thwarts the employer's ability to comply with the FLSA"); *Forrester*, 646 F.2d at 414 ("An employer must have an opportunity to comply with the provisions of the FLSA.").

Plaintiffs then rely on the filing of this lawsuit to prove willfulness, essentially arguing that, because they succeeded on their claims, the City's belief was so unreasonable as to constitute reckless disregard of its FLSA obligations. But the City's defense of this suit and its continued belief that its systems for reporting overtime were reasonable should not be used to retroactively conclude that the City had reckless disregard or knowledge that it was violating FLSA.

Plaintiffs next point to the sheer number of claimed uncompensated minutes as evidence that the City must have known or

---

[3] Plaintiffs deride the certification as "legalistic" or meant to "hold up in court" (Perry Br. 19, 40–41) without explaining what follows from their characterization. It was both of these things, in the sense that its purpose was to ensure that the City complied with FLSA. And although plaintiffs contend that employees had to agree to the certification to be paid, they would be paid by paper check even if timesheets were not submitted with that certification (*see* A1687, 2125).

had reckless disregard that it was violating FLSA (Perry Br. 43). But their argument neglects to account for the fact that the 30,000,000 minutes captured by the scanners (not all of which they claim as compensable overtime) is divided over 2,500-plus employees over a more than 9-year timeframe. The large headline number disguises the fact that that it amounts to only about 20 hours per year per employee, after the application of their rounding-up methodology—not even half an hour per week. That equates to roughly 0.1% of a standard employee's work year, using the annual working hours provided by the CBA. Those hours, nestled among the approved overtime amounts—a figure ten times as large—would not be sufficient to alert the City to a major discrepancy sufficient to charge it with willfulness.

## POINT II

## A NEW DAMAGES TRIAL IS NECESSARY BECAUSE THE JURY ANSWERED THE WRONG QUESTION

The district court erred in failing to instruct the jury that it was to decide whether the entire 15 minutes before and after the employees' shift times was compensable time worked. Plaintiffs' theory of damages rested on the assumption that every minute of unpaid time during

which the employee was clocked in was time worked (A2437–38). To justify that calculation, plaintiffs needed to prove that underlying assumption was sound. The question on the verdict sheet, as supplemented by the district court's response to the jury's understandable confusion, prevented the jury from answering the key question—whether all of the time recorded by scanners counted as time worked under FLSA.

Indeed, the district court itself appeared to conclude that the jury had not answered the question of whether all the time recorded was compensable. After reciting the parties' arguments on the City's post-trial motion, the court merely concluded that there was "insufficient record evidence to indicate that a substantial amount of pre-shift time recorded in CityTime as non-compensable time was, in fact, improperly designated," not that the jury instruction or the verdict sheet's question was accurate (SPA133–34). As explained in our opening brief, there was substantial evidence that not all of plaintiffs' time at the station before or after their shifts constituted time worked (App. Br. 61–62). The jury's request for clarification implies that this was a live issue in deliberations as well.

24

Plaintiffs respond that they were not obligated to "prove that every second recorded in CityTime is 'work'" (Perry Br. 46)—a position in some tension with their argument that all the time recorded in CityTime "to the minute" is work (Perry Br. 39 (emphasis removed)). In any event, their argument relies on the "continuous workday" doctrine and assumes the very point they are trying to prove and that the jury was not asked to decide: whether their working time always begins when they scan in and ends when they scan out. The same issue plagues their argument that the City has a non-delegable duty to record employees' work time (Perry Br. 47). The City had in place a system that *would* accurately record employees' work time, including overtime, which some employees did not avail themselves of. The ambiguity of the question on the verdict sheet did not permit to jury to reach the critical question of whether "the CityTime system documentation of preshift work time should *all* be considered work time" (A3268 (emphasis added)).

Plaintiffs' own description of the evidence presented shows that the jury's confusion was critical. In their own telling, "nearly" all the EMTs and paramedics who testified—again, only 13 out of 2,519 took

the stand—reported that they began working "almost immediately" after clocking into CityTime and ended work "shortly" before scanning out (Perry Br. 49–50). Given that any time worked would need to be eight minutes or more to be eligible for overtime credit, the length of those "almost" and "shortly" periods was highly relevant and it should have been for the jury to decide, just as the jury should have determined what adjustments the "nearly" all limitation warranted.

## POINT III

### A NEW TRIAL ON EMTs' POST-SHIFT CLAIMS IS NECESSARY BECAUSE THE COURT ERRONEOUSLY REJECTED THE CITY'S DEFENSE AS A MATTER OF LAW

A new trial is also needed on post-shift FLSA liability for EMTs because the district court improperly removed from the jury's consideration the City's key defense that the EMTs' brief post-shift exchange of equipment was de minimis. The district court concluded, as a matter of law, that the de minimis defense was unavailable as to the post-shift exchange and instructed the jury that the post-shift exchange was not de minimis (SPA8 n.3, 10 n.5, 130). The district court's minimal analysis referred to paramedics' narcotic exchange, not EMTs' equipment exchange, and then merely recited the factors that courts

26

should consider and made a conclusory determination that the post-shift exchanges could not satisfy those factors as a matter of law (SPA10). The court's decision was error entitling the City to a new trial.

Plaintiffs first mistakenly argue that this Court lacks jurisdiction to hear the appeal of the district court's decision foreclosing the City from raising the de minimis defense (Perry Br. 52–53). They rely on decisions holding that a party may not appeal a *denial* of summary judgment after a full trial is held (Perry Br. 52). But, here, as they themselves explain, the court "grant[ed] summary judgment" to plaintiffs on the de minimis defense (*id.*). There is no prohibition—jurisdictional or otherwise—on reviewing prior partial *grants* of summary judgment on appeal from a final judgment. *See*, *e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (reviewing "both the district court's grant of summary judgment" and the judgment entered "after trial"); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, (2d Cir. 1999) ("[U]pon appeal from a final judgment concluding the action, earlier summary dispositions … are reviewable." (quotation marks omitted)).

Likewise, the City was not obligated to renew its objection in its Rule 50 motion. This Court's decision in *Rothstein v. Carriere* is directly on point. 373 F.3d 275 (2d Cir. 2004). As *Rothstein* explains, a Rule 50 motion is only required "if the district court … allowed the issue to be tried." *Id.* at 284. But a ruling that an issue cannot be presented to the jury takes it "out of the case entirely" and effectively grants "partial summary judgment" on the disputed issue. *Id.* Thus, where the trial court makes its decision as a matter of law and takes the issue out of the jury's hands, "the rationale behind Rule 50 does not apply, and the need for such an objection is absent" and "appellate review … is proper even if the case proceeds to trial and the moving party fails to make a subsequent Rule 50 motion." *Id.* (quotation marks omitted). And there can be no dispute that the district court made its decision "as a matter of law" (SPA8 n.3).

Even in the case on which plaintiffs rely, this Court held that a party can bring a question up for review if it "challenge[s] the jury instructions that raise the same legal question." *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 252 n.6 (2d Cir. 2021). The City did exactly that, objecting both at trial (A3098–50) and devoting an entire section

28

in its post-trial motion to the argument that the court "erred in instructing the jury that the exchange of equipment was de minimis as a matter of law" (SDNY ECF No. 319 at 32–36 (capitalization omitted)). Thus, plaintiffs' argument is demonstrably incorrect, and the issue is properly before this Court.

Plaintiffs also devote substantial argument to another red herring. They argue that consideration of the district court's decision to prevent the City from raising its defense should be reviewed for abuse of discretion under the law-of-the-case doctrine (Perry Br. 53–55). But the law-of-the-case doctrine has no application here, where this Court is considering the decision on appeal for the first time. The doctrine instead applies to reconsideration of an issue by the *same* court in subsequent stages of the litigation. *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020). "An appellate court's function *is* to revisit matters decided in the trial court," and it is "not bound by district court rulings under the law-of-the-case doctrine." *Musacchio v. United States*, 577 U.S. 237, 245 (2016).

Just because the district court elected not to alter its prior decision under the law-of-the-case doctrine does not mean that this

Court's consideration of the district court's erroneous decision is subject to a heightened standard of review, nor was the City obliged to seek interlocutory review—an extraordinary remedy—of a partial summary judgment decision on a single defense. Not only do plaintiffs fail to cite any authority for this extraordinary proposition, it would fly in the face of the final-judgment rule's "policy against piecemeal appeals." *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011).

Plaintiffs attempt one last procedural gambit in an attempt to foreclose review of the district court's erroneous decision. They argue that, because the question that went to the jury on liability did not distinguish between EMTs and paramedics, the City is precluded from arguing that the jury should have heard its de minimis defense with respect to the post-shift equipment exchange for paramedics (Perry Br. 58–59). They are mistaken. The district court's de minimis instruction, to which the City objected, covered both narcotics exchanges for paramedics and post-shift equipment exchanges for EMTs (A3255), and it would have been fruitless to recapitulate the City's objection as to the phrasing of the question on the verdict sheet. As shown by the case on which plaintiffs rely, preservation only requires that the party "'state

30

distinctly the matter objected to and the grounds of the objection.'" *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002) (quoting Fed. R. Civ. P. 51). The City did so, at summary judgment, trial, and in its post-trial motion. It was not also obliged to propose a futile re-writing of the verdict sheet to preserve its argument for appeal.

Turning to the merits, plaintiffs puzzlingly begin by arguing that the district court's instruction on the de minimis defense was correct (Perry Br. 55). But the City does not challenge whether the district court accurately described the law in general, but its ruling on summary judgment, as explained to the jury, that the "time spent exchanging equipment at the end of a shift … is not de minimis" (A3255). Indeed, this ruling, as conveyed to the jury, could have prejudiced how the jury applied the de minimis factors to other work in the course of its deliberations by presenting a legally erroneous example of work that was not de minimis.

Next, plaintiffs argue that the trial testimony proves that the EMTs' post-shift equipment exchange was not de minimis (Perry Br. 55–57). At the outset, the fact that plaintiffs can point to some trial testimony in support of an argument that the exchange was not de

31

minimis is not dispositive because the jury was not permitted to consider the defense and resolve the fundamental factual dispute. The City can also point to evidence that would permit the jury to conclude that the exchange was de minimis (App. Br. 64–66), which plaintiffs studiously ignore. A new trial is warranted to permit the jury to decide.

In fact, the weakness of plaintiffs' arguments in support of their preferred conclusion underscores the necessity of a new trial on this point. They first argue that there are no administrative difficulties with tracking the time spent on post-shift exchanges, based solely on the fact that supervisors can see the timeclock data recording the time plaintiffs arrived and left (Perry Br. 55–56). But that does not establish that the post-shift exchange, in particular, is easily tracked. Instead, there are substantial administrative difficulties in recording the time spent on post-shift exchanges where plaintiffs did not submit requests for overtime for those tasks using the established, accessible system.

Likewise, plaintiffs point to the testimony of one witness who testified that post-shift exchange took five minutes on average (Perry Br. 56); *but see Lindow v. United States*, 738 F.2d 1057, 1063–64 (9th Cir. 1984) (seven to eight minutes per day may be de minimis). But

multiple plaintiffs testified that the post-shift equipment exchange took no more than two minutes—testimony plaintiffs largely do not address (*see* A2789, 2904). Likewise, the evidence did not show that the exchange always occurred after the end of the employees' regular shift. Instead, substantial evidence showed that the exchange often happened during a shift (*see* A1363–64, 1423, S.D.N.Y. ECF No. 152 at 79).

Finally, plaintiffs argue that any error in rejecting the City's de minimis defense was harmless because no damages were awarded for days where CityTime captured less than eight minutes of unpaid time. At the outset, plaintiffs cite nothing to suggest that a mistaken ruling at summary judgment that takes an issue "out of the case entirely," *Rothstein*, 373 F.3d at 284, is subject to harmless-error review. Even assuming that harmless error applies, plaintiffs are mistaken. Assuming they in fact worked the entire time, eight or more minutes of unpaid time may be found to be de minimis. *Lindow*, 738 F.3d at 1063–64. Indeed, "[m]ost courts have found daily periods of approximately 10 minutes de minimis." *Id.* at 1062 (collecting cases).

Beyond that, even assuming that plaintiffs were correct and that the jury did properly find that the time clocked in was all compensable

work time, the de minimis equipment exchange could still significantly impact the damages award. If the time plaintiffs took for the post-shift equipment exchange brought them over the eight-minute threshold, a finding that the exchange was de minimis would eliminate any award for post-shift overtime even under plaintiffs' theory of damages. The jury should have been permitted to consider whether eliminating the post-shift exchange from the calculation as de minimis brought the time requested below the CBA's agreed-upon threshold.

Lastly, the error is not harmless because it could have an effect on the whole span of time claimed as post-shift work. Notably, any de minimis activity "does not trigger the continuous workday rule." *Singh v. City of New York*, 524 F.3d 361, 371 n.8 (2d Cir. 2008). Thus, if an employee were engaging in some nonwork activity before the equipment exchange, and the exchange was de minimis, the interim activity would also not be part of the continuous workday and would not count toward plaintiffs' damages. In short, there are multiple ways in which the district court's mistaken ruling may have led the jury to award substantial, unproven damages against the City. The City is entitled to a new trial with all its defenses available.

34

## CONCLUSION

The Court should vacate the judgment appealed from; enter judgment in defendants' favor on the claims for pre-shift overtime; and remand for a new trial on damages and on post-shift FLSA liability for EMTs.

Dated:  New York, NY
        March 31, 2022

                              Respectfully submitted,

                              HON. SYLVIA O. HINDS-RADIX
                              *Corporation Counsel*
                              *of the City of New York*
                              Attorney for Appellants


                        By:   /s/ Jamison Davies
                              JAMISON DAVIES
                              Assistant Corporation Counsel

                              100 Church Street
                              New York, NY 10007
                              212-356-2490
                              jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
DANIEL MATZA-BROWN
JAMISON DAVIES
   *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,987 words, not including the table of contents, table of authorities, this certificate, and the cover.

<u>          /s/ Jamison Davies          </u>
JAMISON DAVIES